**Leonard HARTNETT and Aileen Hartnett, Appellants,**

v.

**HAMPTON INNS, INC., Hampton G.H.I. No. 1, a California Limited Partnership d/b/a Hampton Inns Northwest, and Baker Protective Services, Inc. d/b/a Wells Fargo Guard Services, Appellees.**

No. 04–93–00013–CV.

Court of Appeals of Texas, San Antonio.

Dec. 29, 1993.

Rehearing Denied Feb. 9, 1994.

**164**

William G. Keiler and W. Stephen Graves, Graves & Keiler, San Antonio, for appellants.

John Milano, Jr., Thornton, Summers, Biechlin, Dunham & Brown, Inc.; Cathy J. Sheehan, Lewin Plunkett and David L. Downs, Plunkett, Gibson & Allen, Inc., San Antonio, for appellees.

Before BUTTS, PEEPLES and LOPEZ, JJ.

**OPINION**

BUTTS, Justice.

Leonard and Aileen[1] Hartnett appeal a take-nothing judgment granted in favor of (1) Hampton Inns, Hampton G.H.I. No. 1, a California Limited Partnership d/b/a Hampton Inn Northwest (Hampton Inns) and (2) Baker Protective Services, Inc. d/b/a Wells Fargo Guard Services (Wells Fargo) following a ten-day jury trial in which they sought recovery based on both negligence and the Deceptive Trade Practices Act (DTPA) following theft of personal property. In a limited appeal, appellants raise four points of error.[2] Points of error one, two and four are applicable to Hampton Inns; point of error three is applicable to Wells Fargo. We affirm.

The record shows that the Hartnetts stayed at a Hampton Inn in San Antonio while en route from Florida to Arizona. They were moving to Arizona and traveling with two large U–Haul trucks, a trailer and a car, containing most of their belongings. One truck, the trailer and car were stolen from the Hampton Inn's parking lot. The truck and some of its contents were later recovered.

Leonard allegedly reserved their lodgings during a prior trip after learning from desk personnel that Wells Fargo provided all-night security patrols. On arrival, Leonard expressed concern for the security of his property and he parked in a particular spot so that the trucks would be visible from the front desk. The desk clerk allegedly knew but did not disclose to the Hartnetts that the front desk would not be manned throughout the night, and did not notify either the night auditor who followed her on duty or Wells Fargo about the Hartnetts' security concerns.

The Hartnetts had insurance with United Services Automobile Association (USAA) which covered the personal property in the two U–Haul trucks. As previously dis-

---

1. The record is inconsistent about whether appellant's name is spelled Eileen.

2. Appellants pursued a limited appeal by both requesting a partial statement of facts and stating proposed points to be relied on in their request to the court reporter. *See* Tex R.App.P. 53(d). Also, in their request to prepare the partial statement of facts, appellants stated that they expected to file a narrative statement of facts, but they did not do so. *See* Tex.R.App.P. 53(i).

cussed, only one of these trucks was stolen. The contents were valued at $186,000 in the Hartnetts' insurance policy. USAA paid $186,000 to the Hartnetts pursuant to this insurance policy and, under their contract with the Hartnetts, became subrogated for this sum to the Hartnetts' right to recover against Hampton Inns and Wells Fargo. Prior to trial, USAA settled its claims with Hampton Inns and entered into an agreement in which USAA assigned all of its subrogation rights to Hampton Inns; in consideration for the assignment Hampton Inns paid the sum of $150,000.

The Hartnetts sued Hampton Inns and Wells Fargo for DTPA violations and negligence and the case was tried on both theories. However, the DTPA claim was submitted to the jury only against Hampton Inns. The jury found all parties negligent and attributed the fault as follows: 85% to the Hartnetts, 10% to Hampton Inns, and 5% to Wells Fargo. This apportionment effectively eliminated recovery under the negligence theory. The jury found that Hampton Inns violated the DTPA, but failed to find a knowing violation. The jury awarded $100,000 in damages and approximately $33,333 in attorney fees.[3] The trial court awarded an offset pursuant to the assigned contractual subrogation claim, resulting in a take-nothing judgment in favor of appellees.

In point of error one, appellants argue the trial court erred by overruling their motion in limine to exclude evidence concerning the existence and extent of their hazard insurance coverage, and thus erred by permitting such testimony. Presumably the trial court admitted this evidence for valuation of the stolen goods and for impeachment purposes.

■ "[T]he purpose of a motion in limine is to prevent the asking of prejudicial questions and the making of prejudicial statements in the presence of the jury." *Hartford Accident & Indem. Co. v. McCardell,* 369 S.W.2d 331, 335 (Tex.1963). A ruling on a motion in limine preserves nothing for review. If a motion in limine is overruled, the complaining party must object to the harmful argument or question to preserve error.

*Pool v. Ford Motor Co.,* 715 S.W.2d 629, 637 (Tex.1986).

■ Here, appellants failed to preserve error. The limited record discloses appellants did not object to discussion of insurance coverage during opening or closing arguments, nor when evidence about insurance coverage was elicited during trial. Further, the record shows that appellants' counsel also elicited testimony about the existence of the insurance coverage from Leonard, appellants' own witness, during direct examination. Point of error one is overruled.

In point of error two, appellants argue that the trial court erred by refusing their request for three special jury instructions that an innkeeper is presumptively liable for his guests' goods, a higher standard than ordinary negligence liability, and that a public business operator has a duty to protect against or disclose known or reasonably discoverable risks of criminal activity to its patrons. Appellants requested the three special instructions by dictating them to the court reporter in the presence of the court and opposing counsel; however, they were not submitted in writing. Thus, the issue arises whether appellants preserved this complaint for appeal.

Rule 273 provides, in pertinent part, that a party is entitled to present to the court any instruction that has been omitted from the charge. Tex.R.Civ.P. 273. Rule 278 provides, in pertinent part, if a party is relying on an omitted instruction, then the party must submit to the court a substantially correctly worded instruction in *writing.* Tex. R.Civ.P. 278 (emphasis added).

■ The rule requiring a request to be in writing and to state the requested material in substantially correct wording has been strictly applied. Dictating the request to the court reporter in the presence of the court and opposing counsel is sufficient to register an *objection,* but it is not sufficient to support an appeal based on the trial court's refusal to submit *requested* material. *See* Tex.R.Civ.P. 272, 273, 278; *Woods v. Crane Carrier Co.,* 693 S.W.2d 377, 379 (Tex.1985); *James v. Hill,* 753 S.W.2d 839, 840 (Tex.

---

**3.** The attorney fees award was stated as 33⅓% of the Hartnetts' recovery.

App.—Fort Worth 1988, no writ). Appellants having failed to properly preserve this point for appeal, point of error two is overruled.

In point of error three, appellants argue that the trial court erred by refusing to submit to the jury their DTPA claim against Wells Fargo. Appellants allege they were "consumers" of Wells Fargo's security services and that Wells Fargo failed to perform its services in a "good and workmanlike" manner by failing to make scheduled patrols of the parking lot.

■ Error was not properly preserved. The record shows appellants, who had the burden of proof, did not specifically *request* submission of a DTPA question against Wells Fargo, but instead *objected* to the omission of Wells Fargo from questions one and two. Questions one and two submitted the DTPA claim against Hampton Inns.

■ A request for submission is required to preserve the right to complain of a trial court's failure to *submit* a question; whereas, an objection is required to preserve a complaint as to a *defective* question. Tex. R.Civ.P. 274, 278. Objections and requests are not "alternatively permissible methods" of complaint. *Hernandez v. Montgomery Ward & Co.*, 652 S.W.2d 923, 925 (Tex.1983), *overruled on other grounds, Acord v. General Motors Corp.*, 669 S.W.2d 111, 114 (Tex. 1984). Thus, the issue arises whether appellants' allegations against Wells Fargo necessitated submission of an additional question(s) or modifications to questions one and two.

The record shows that merely inserting "Wells Fargo" into questions one and two would not be compatible with the facts of this case. Inherent in question one is personal contact and representations between appellants and a representative of Hampton Inns;

no such personal interaction occurred between appellants and a Wells Fargo representative.[4] The same is true of question two. Thus, modification of questions one and two by inserting "Wells Fargo" is inadequate to support appellants' allegations. Moreover, an objection alone failed to preserve error. Instead, to preserve error, appellants would be required to *request submission* and tender an additional DTPA question(s) against Wells Fargo to present their DTPA claim against Wells Fargo based on the facts of this case.

The trial court's failure to submit a question is not a ground for reversal unless the party who had the burden of proof properly requested the question. Tex.R.Civ.P. 278. Appellants failed to request and tender a DTPA question against Wells Fargo in writing. Therefore, error was not preserved.

For all the foregoing reasons, point of error three is overruled.[5]

In their final point of error, appellants argue the trial court erred in assessing the USAA subrogation sum against their recovery and by refusing to award them costs and attorney fees. As previously discussed, USAA had assigned all of its subrogation rights to Hampton Inns.

■ First, appellants argue that any offset is prohibited because Hampton Inns did not properly plead its right of offset. We disagree. Appellants correctly argue the right of offset is an affirmative defense. Also, the burden of pleading the right of offset and of proving the facts necessary to support it are on the party asserting it. *Brown v. American Transfer & Storage Co.*, 601 S.W.2d 931, 936 (Tex.), *cert. denied*, 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474 (1980); *Southwestern Bell Tel. Co. v. Gravitt*, 551 S.W.2d 421, 428 (Tex.Civ.App.—San Antonio 1977, writ ref'd n.r.e.). Although the

---

4. For instance, "[r]epresenting that services had ... benefits they did not have ..." and "[f]ailing to disclose information about services that was known at the time of the transaction with the intention to induce a person into a transaction ..." cannot apply to Wells Fargo because appellants did not have contact with any Wells Fargo representative who could have represented anything to them or induced them, respectively.

5. We are not saying that the Hartnetts were not "consumers" as to Wells Fargo. *See Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540–41 (Tex.1981) (The Act is designed to protect consumers from any deceptive trade practices made in connection with the purchase or lease of any goods or services).

pleading is not artfully drawn, Hampton Inns met this burden.

During the trial, appellees filed a document titled "Joint Election of Settlement Credit" which states that Hampton Inns is entitled to a credit based on USAA's subrogation claim.[6] We look at the substance of a plea for relief to determine the nature of the pleading, not merely its title. *See* TEX. R.CIV.P. 71; *State Bar of Tex. v. Heard,* 603 S.W.2d 829, 833 (Tex.1980). Most important and dispositive of the point in this case, appellants did not object to testimony by Eleanor Pollock, a subrogation manager at USAA, proving the assignment to Hampton Inns and the subrogation claim. Nor did appellants object to the admissibility of the subrogation agreement and assignment for consideration by the trial court. Further, there was no objection that the pleadings did not support the evidence. Any error was thus waived. We therefore hold Hampton Inns sufficiently demonstrated its right of offset.

■ Second, appellants complain that because USAA's claims were dismissed with prejudice prior to trial, the trial court was precluded from awarding an offset based on the USAA subrogation agreement. We disagree. USAA is not then a necessary party. *See Glass v. Carpenter,* 330 S.W.2d 530, 533 (Tex.Civ.App.—San Antonio 1959, writ ref'd n.r.e.). An assignee can recover in its own name. *Texas Mach. & Equip. Co. v. Gordon Knox Oil & Expl. Co.,* 442 S.W.2d 315, 316–17 (Tex.1969).

■ Third, appellants argue that Hampton Inns may not obtain an offset because it failed to satisfy its burden "of distinguishing the portion of its insured/subrogee's third-party recovery which represents damages to which subrogation rights apply" by failing to submit evidence and an issue on the subroga-

tion claim to the jury. We note that the question of subrogation is one of law for the trial court. *Parker v. Associated Indem. Co.,* 715 S.W.2d 398, 400 (Tex.App.—San Antonio 1986, writ ref'd n.r.e.). Essentially, appellants seemingly complain that Hampton Inns is not entitled to a first priority, "dollar-for-dollar" recovery from their $100,000 award by the jury.

■ Although this assertion may be proper in some instances, appellants are ignoring the express terms of their written agreement with USAA which assigned to USAA "(to the extent of the payment by USAA) each and all claims and demands against any other party, person, persons, partnership or corporation, arising from or connected with such loss and damage...." [7]

■ Whether a contract is ambiguous is a question of law for the court. *Reilly v. Rangers Management, Inc.,* 727 S.W.2d 527, 529 (Tex.1987).

> In the interpretation of contracts the primary concern of courts is to ascertain and to give effect to the intentions of the parties as expressed in the instrument.... To achieve this object the Court will examine and consider the entire instrument so that none of the provisions will be rendered meaningless.... If a written instrument is so worded that a court may properly give it a certain or definite legal meaning or interpretation, it is not ambiguous. On the other hand, a contract is ambiguous only when the application of the applicable rules of interpretation to the instrument leave it genuinely uncertain which one of the two meanings is the proper meaning....

*R & P Enter. v. LaGuarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517, 518–19 (Tex.1980) (citations omitted). We agree with the trial court

---

**6.** We do not find it dispositive that this pleading is more appropriate to, and in fact cites to, a claim pursuant to Texas Civil Practices and Remedies Code § 33.014. It provides sufficient notice so that appellants cannot claim surprise by the offset.

**7.** In Texas, subrogation may arise from (1) the agreement of the parties or (2) equity to prevent fraud or injustice. *Means v. United Fidelity Life Ins. Co.,* 550 S.W.2d 302, 308–09 (Tex.Civ.App.—

El Paso 1977, writ ref'd n.r.e.). Texas courts have repeatedly declared contractual subrogation rights to be valid and enforceable. *See, e.g., Duval County Ranch Co. v. Alamo Lumber Co.,* 663 S.W.2d 627, 637 (Tex.Civ.App.—Amarillo 1983, writ ref'd n.r.e.); *Means,* 550 S.W.2d at 308; *Group Hosp. Serv., Inc. v. State Farm Ins. Co.,* 517 S.W.2d 897, 899 (Tex.Civ.App.—Eastland 1974, no writ).

that this subrogation agreement is not ambiguous; appellants assigned USAA (to the extent of the payment by USAA) their rights to the monies awarded by the jury.

The subrogation agreement between USAA and Hampton Inns, in turn, states "[i]t is the intention of USAA to assign all of its rights ... to first monies out of any final payment or settlement between Hampton Inns and (appellants)."

In their proof of loss claim to USAA, the Hartnetts stated that the loss occurred as the result of "total theft of rented U–Hall [sic] truck." The total insurance covering the loss was $186,000, and the claim was for $186,000. In consideration of the payment of that amount under the policy, the Hartnetts assigned and transferred to USAA any payments made under any claims and demands against other parties "arising from or connected with such loss and damage." Thus, the award of an offset must be directly connected to the action upon which the DTPA consumer's award is based.

As noted earlier, the jury found that Hampton Inns had engaged in conduct that violated the DTPA. Question five, the damages question, referred to that finding and inquired:

> What sum of money, if any, if paid now in cash, would fairly and reasonably compensate [the Hartnetts] for their damages, if any, that resulted from such conduct?
>
> Consider the following elements of damages, if any, and none other.
>
> a. Personal property stolen and not recovered (the market value of such property at the time and place of its loss).
>
> b. Personal property stolen but recovered damaged (the difference, if any, between the market value of such property at the time and place it was stolen immediately before it was stolen and after it was recovered).
>
> c. Mental anguish.
>
> Do not include any amount of interest on damages, if any.
>
> Answer in dollars and cents for damages, if any.
>
> Answer: *$ 100,000*

The jury was instructed to include and necessarily included within this finding both the value of all the property losses and mental anguish arising from or connected with the theft.

Because Hampton Inns stands in USAA's shoes, it is entitled to recover the subrogation claim (to the extent of the payment by USAA). *Texas Mach & Equip.*, 442 S.W.2d at 316–17; *F.H. Vahlsing v. Hartford Fire Ins. Co.*, 108 S.W.2d 947, 950 (Tex.Civ.App.—San Antonio 1937, writ dism'd).

Actual damages suffered under the DTPA are determined by the total loss sustained by the plaintiff as a result of the deceptive trade practices. Allowable set-offs will necessarily reduce the actual damages and hence the sum subject to trebling. *Smith v. Baldwin*, 611 S.W.2d 611, 617 (Tex.1980). Therefore, in the present case any offsets were correctly deducted from the actual damages.

Finally, appellants argue that as prevailing parties they are entitled to attorney fees, irrespective of the subrogation agreement.

■■■ It is true that net recovery to the consumer after all offsets are allowed to the defendant is not necessary for the consumer to prevail under the DTPA. *McKinley v. Drozd*, 685 S.W.2d 7, 9–10 (Tex.1985); *Matthews v. Candlewood Builders Inc.*, 685 S.W.2d 649, 650 (Tex.1985). Once a consumer has prevailed in a DTPA action, the recovery of attorney's fees is mandatory. TEX. BUS. AND COM. CODE ANN. § 17.50(d) (Vernon 1987); *Griffith v. Porter*, 817 S.W.2d 131, 137 (Tex.App.—Tyler 1991, no writ); *Satellite Earth Stations E. v. Davis*, 756 S.W.2d 385, 387 (Tex.App.—Eastland 1988, writ denied); *Doerfler v. Espensen*, 659 S.W.2d 929, 931 (Tex.App.—Corpus Christi 1983, no writ).

However, attorney fees should be offset in the judgment along with the other awards of damages and interest because the attorney fees award belongs to appellants, and not to the attorney, absent specific authorization. *Murrco Agency, Inc. v. Ryan*, 800 S.W.2d 600, 603 (Tex.App.—Dallas 1990, no writ); *Satellite Earth*, 756 S.W.2d at 387; *Streeter v. Thompson*, 751 S.W.2d 329, 331 (Tex. App.—Fort Worth 1988, no writ). Here, the subrogation sum ($186,000) was a sufficient

amount for the trial court to order full offset of the appellants' damage award ($100,000) plus their attorney fees ($33,333) by the trial court.

Point of error four is overruled.

The judgment is affirmed.